# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| HAILEY HEILMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-cv-3260 |
| ) | |
| MAGGIE BURKE et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff Hailey Heilman's Motion for Leave to Take Additional Depositions (d/e 75) (Motion). For the reasons set forth below, the Motion is ALLOWED in part.

## BACKGROUND

In February 2017, Plaintiff Hailey Heilman was an inmate at the Logan Correctional Center (Logan), a prison operated by the Illinois Department of Corrections (Department or IDOC). On February 5, 2017, one of Heilman's cell mates, Jennifer Fleming, allegedly sexually assaulted her (the Rape). See Defendants' Answer and Affirmative Defenses to Plaintiff's Amended Complaint (d/e 65), ¶ 31. Heilman has brought this action against 19 Department employees under 42 U.S.C. § 1983 and state law for their alleged actions or inactions related to the Rape. The

Defendants are: then Logan Warden Margaret Burke; Assistant Wardens Beatrice Calhoun and Angel Wilson; Logan Correctional Officers Justin Gannon, Chase Goleash, Kelby Jasmon, Christopher Lynch, Legna Velazquez, Brandon Lounsberry; Aadam Cox; Guy Carter; Troy Singleton, and Greg Dejarnette; Logan Internal Affairs Lieutenant Todd Sexton and Internal Affairs Officer Nicole Veech; Logan Placement Office employees Rachelle Aiken, Joshua Edwards, and Jacob Gerringer; and Logan beautician Annette Veech who supervised the Logan beauty shop. Heilman alleges that the 19 Defendants violated her Eighth Amendment right to be free from cruel and unusual punishment because each "knew the danger Fleming posed to Ms. Heilman and that there was a strong likelihood that Fleming would attack Ms. Heilman," and each Defendant consciously failed to take reasonable steps to prevent Fleming from assaulting Ms. Heilman." Amended Complaint (d/e 48) ¶¶ 37-38. Heilman also alleges that Warden Burke and Assistant Wardens Calhoun and Wilson consciously established a policy at Logan by which "identifiably vulnerable prisoners like Ms. Heilman faced a substantial risk of harm of sexual and physical attack." Heilman alleges that Burke, Calhoun, and Wilson allowed this policy to "exist and thrive because Defendants Burke, Calhoun, and Wilson were deliberately indifferent to the problem [of the

substantial risk of sexual and physical attack], thereby effectively ratifying it." Amended Complaint, ¶¶ 45-46.  Heilman alleges that Warden Burke and Assistant Wardens Calhoun and Wilson also violated her Eighth Amendment rights by failing to train Logan staff, each knowing that such failures would cause "vulnerable prisoners, like Ms. Heilman, [to] be physically and sexually assaulted by dangerous inmates, like Fleming." Amended Complaint, ¶ 49.  Lastly, Heilman alleges a state-law claim against the 19 Defendants claiming that each Defendant knew that his or her "misconduct posed a serious risk of harm or safety to Ms. Heilman" and each acted "willfully and wantonly and/or with reckless indifferences or conscious disregard for Ms. Heilman's safety and wellbeing." Amended Complaint, ¶¶ 52-53.

    Heilman has taken eight depositions of Defendants Velazquez, Gannon, Lynch, Jasmon, Cox, Gerringer, Nicole Veech, and Annette Veech.  Heilman has started the ninth deposition of the alleged assailant and non-party Fleming.  The parties have also agreed to a Rule 30(b)(6) deposition of the Department, also a non-party, as the tenth deposition.  Heilman asks for leave to take the deposition of the remaining 11 Defendants.  Defendants object.

ANALYSIS

A party may take 10 depositions without a stipulation of the parties or leave of Court.  Fed. R. Civ. P. 30(a)(2)(A)(i).  In considering a motion for leave to take additional depositions, the Court must decide whether allowing additional depositions is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1). The Court must also consider factors that would limit the appropriate amount of discovery that should be allowed, including whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2).  The party seeking to take additional depositions must make a particularized showing for the need for such depositions.  See Scott v. City of Sioux City, 298 F.R.D. 400, 402-03 (N.D. Ia. 2014); United States v. U.S. Steel Corp., 2014 WL 1571322, at *1-*2 (N.D. Ind. April 17, 2014).  "The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual."  Newell v.

State of Wisconsin Teamsters Joint Council No. 39, 2007 WL 3166757, at *1 (E.D. Wis. October 25, 2007).

The Defendants cite authority from other Circuits for the proposition that a party must justify each deposition already taken before asking to take additional depositions. Response to Plaintiff's Motion for Leave to Take Depositions (Doc. 75) (d/e 81) (Response), at 4-5 (citing Lawson v. Spirit Aerosystems, Inc., 2020 WL 1285359 at *9 (D. Kan. March 18, 2020) (quoting Barrow v. Greenville Indep. Sch. Dist., 202 F. R. D. 480, 483 (N.D. Tex. 2001))). The Court declines to hold that a movant must present proof of the appropriateness of each prior deposition as a required element of a Rule 30(a)(2)(A)(i) motion. The Seventh Circuit has instructed the Court to consider the "totality of the circumstances" in deciding whether to authorize additional discovery. "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Rowlin v. Alabama Dept. of Public Safety, 200 F.R.D. 459, 461 (M.D.Ala.2001)). The Court considers the depositions already taken as a factor for the Court to consider in the totality of the

circumstances, but declines to hold that a party is required to prove the appropriateness of each prior deposition as an element of a Rule 30(a)(2)(A)(i) motion.

In light of these principles, the Court allows Heilman to take some additional depositions. Critical issues in this case include the knowledge and intent of each Defendant and the personal involvement of each Defendant. See e.g., Johnson v. Rimmer, 936 F.3d 695, 710-11 (7th 2019) (Section 1983 claim requires proof of personal involvement). Each count requires Heilman to prove each Defendant's knowledge of Heilman's circumstance, each Defendant's opportunity to act to avert the Rape, each Defendant's action or inaction, and each Defendant's intent motivating each Defendant's action or inaction. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Heilman wishes to depose Defendants to discover information on these and other issues.

Heilman has relatively limited access to the Defendants to gather information because each is a Defendant represented by counsel. Heilman must go through counsel to inquire of each Defendant, but defense counsel has full access to each Defendant. Furthermore, ascertaining a person's subjective knowledge and subjective intent often reasonably requires inquiring of the person directly. For example, in this case, Heilman alleges

that she and others alerted various Defendants to the threat Fleming posed to her. Heilman reasonably needs to inquire of each relevant Defendant's recollection of the alleged notices of the risk. She needs information from the Defendants to evaluate her claims against each Defendant. Some of this information has been secured by written discovery such as interrogatories and document productions, but additional questioning through deposition may be needed for some of the remaining Defendants. This would be particularly true when the information already discovered shows a possibility of a Defendant's personal involvement in activity that could have averted the alleged Rape.

 Moreover, the issues at stake are significant. Heilman alleges that she was raped by a fellow prisoner. Prisoner-on-prisoner violence may constitute cruel and unusual punishment if a state prison official knows the violence is likely, has sufficient personal involvement to prevent it, and chooses to let the violence happen. Heilman's allegations, therefore, are significant. Discovery to date provides some information that may tend to support to those claims. Some discovery indicates that the closing of a wing at Logan known as D Wing (a/k/a "unit 15D," "max unit," and "Delta Wing") may have possibly been causally related to the Rape. The discovery indicates that D Wing housed inmates with disciplinary problems.

Fleming was in D Wing.  Defendant Gannon stated that placing inmates such as Fleming in the general population created a risk of harm to inmates in the general population.  See, Response, Exhibit 4, Deposition of Justin Gannon, at 38-55; Exhibit 5, Defendant Justin Gannon's Answers to Interrogatory, Answer to Interrogatory 4 ("[I] believe that had the inmates in previously housed in 15D had not been spread out among the general population inmates, the incident probably would not have happened.")  When D Wing was closed, Fleming was placed in Heilman's cell and thereafter allegedly threatened and harassed Heilman and ultimately committed the Rape.  The information provided by Defendant Gannon may give some support to some elements of Heilman's claims.  If Heilman can prevail on any of her claims, her damages are likely to be significant and could result in a punitive award against some Defendants.

Given that current discovery provides some support for Heilman's claims, the amount in controversy is substantial, and Heilman has limited access to represented Defendants to discover information on each Defendant's subjective knowledge and intent, the Court finds that additional depositions are proportionate to the needs of this case.

The Court allows Heilman to depose Warden Burke and Assistant Wardens Calhoun and Wilson.  Warden Burke and perhaps Assistant

Wardens Calhoun and Wilson are likely to have had some knowledge or involvement in the decision to close D Wing.  Heilman alleges that Burke, Calhoun, and Wilson established policies and training that they knew would create an unreasonable risk to Heilman.  In light of the information secured to date in discovery and the allegations, Heilman should be allowed to depose these three individuals to explore each individual's knowledge and intent about Logan's policies and training, and in particular each of these three Defendant's knowledge and intent regarding the closing of D Wing.

The Defendants argue that these depositions will be cumulative to the Rule 30(b)(6) deposition of the Department.  The Court agrees that there could be some overlap to the extent that Department policy and procedures affected relevant decisions at Logan.  The Rule 30(b)(6) deposition, however, would not address the subjective knowledge and intent of each Defendant.  Given the overlap, and the fact that Heilman has already taken 10 depositions that should have provided other general information about operations at Logan, the length of these three depositions should be limited.  The Court limits the deposition of Burke to five hours and the depositions of Calhoun and Wilson to three hours each.

Discovery so far indicates that Defendant Logan Placement Officer Joshua Edwards made the decision to place Fleming in the cell with

Heilman.  See Response, Exhibit 1, Gerringer Deposition, at 117-18. Heilman alleges that this decision put her at risk of harm that ultimately led to the sexual assault.  As such, she should be allowed to depose Edwards. Heilman must prove that Edwards knew he was creating a risk of harm by placing Fleming in that cell and did it anyway with deliberate indifference to the likely harm to other inmates including Heilman.  Given that Edwards' involvement centered around this one decision, Heilman would not need significant time to secure the relevant information.  Heilman has already deposed a fellow employee in the Logan Placement Office, Defendant Gerringer, and so has already had the opportunity to secure basic information about the Office.  The Court, therefore, limits the deposition of Edwards to two hours.

     Defendant Sexton was a Lieutenant in Internal Affairs at Logan. Heilman alleges that she and inmates Williams and Gibbons each informed Logan Internal Affairs in writing on more than one occasion that Fleming was harassing and threatening Heilman.  Amended Complaint, ¶ 27. Sexton may have some knowledge of the existence of such alleged written notices to Internal Affairs and any investigation of such notices.  Heilman, again, has already deposed Internal Affairs Officer Nicole Veech, and so, has already had the opportunity to secure general information about

Internal Affairs at Logan. The Rule 30(b)(6) deposition would also provide an opportunity to secure related Department policies and procedures. Sexton's deposition, therefore, need not be long. The Court finds that Heilman should be allowed to depose Defendant Sexton for two hours.

Defendants Carter, Singleton, and Dejarnette are alleged to have violated Heilman's rights by misclassifying either Heilman or Fleming. Heilman alleges each of these Defendants: (1) knew that Heilman's classification created a serious risk that Heilman would be subject to a sexual assault and each Defendant did not care about such risk and gave Heilman the classification anyway; or (2) knew that Fleming's classification created a serious risk that Fleming would sexually assault an inmate such as Heilman and each Defendant did not care about such risk and gave Fleming the classification anyway. The Court realizes that some information regarding each of these Defendant's personal knowledge and intent could be secured through written discovery. Still, some additional questioning would be reasonable and appropriate in this case. The Court therefore determines that depositions of Defendants Carter, Singleton, and Dejarnette is appropriate. The depositions need not be long. Heilman has had or will have ample opportunity to secure information regarding the classification process through the Rule 30(b)(6) deposition of the

Department, written discovery, and the depositions of the other Defendants. The Court, therefore, authorizes a two-hour deposition of each of these three Defendants.

Defendant correctional officers Goleash and Lounsberry may not have directly worked on Heilman's housing unit, Housing Unit 8. Heilman states in the Motion that Defendant correctional officers Velazquez, Gannon, Lynch, Jasmon, and Cox were the "correctional officers assigned to the housing unit where Ms. Fleming and Plaintiff shared a room in the days before Plaintiff's rape." Motion, at 2. Heilman states that Goleash and Defendant correctional officer Lounsberry were "responsible for ensuring the safety of prisoners in Housing Unit 8," but does not state that they were assigned to work in Housing Unit 8. However, Heilman alleged in the Amended Complaint that Lounsberry made rounds in Heilman's Housing Unit 8 the night of the alleged sexual assault. Amended Complaint, ¶ 33.

Lounsberry and Goleash's connection to Heilman's situation therefore may be limited to indirect information from other Logan employees and inmates. Lounsberry and Goleash should have knowledge of Logan and the duties and procedures of correctional officers, but Heilman had ample opportunity to gather that information from other sources. The

Department's Rule 30(b)(6) deponents and the other Defendants who have already been deposed should have provided information about other matters such as the organizational structure of correctional officers and their duties at Logan. Heilman, therefore, has made less of a showing for a need to depose these Defendants.

Heilman, however, makes one specific allegation about Goleash. Heilman alleges that on February 4, 2017, inmate Ashley Underwood told Defendant correctional officers Goleash and Jasmon about Fleming's behavior toward Heilman. Heilman alleges that Defendant Jasmon responded that Heilman should "beat Fleming's ass." Amended Complaint, ¶ 30. Heilman has already discovered some information about the incident. Heilman has already deposed Jasmon, and so presumably discovered his testimony regarding Underwood's alleged notice. Goleash and Lounsberry have provided answers to interrogatories. Still, Heilman reasonably may need to inquire of Goleash directly to evaluate and develop her case. Weighing the totality of the circumstances, the Court will allow a one-hour deposition of Goleash.

Likewise, Heilman alleges Lounsberry conducted housing checks of Heilman's housing unit near the time of the Rape. The Court grants

Heilman's request for leave to depose Defendant Lounsberry and will allow a one-hour deposition of Lounsberry.

Heilman also has not identified any allegation or information either in the Amended Complaint or the Motion of any specific incident or action directly involving Defendant Aiken.  Aiken was Defendant Edwards' supervisor in the Logan Placement Office when Edwards placed Fleming in Heilman's cell.  Motion, at 6.  Heilman does not allege in the Amended Complaint or indicate in the Motion that Aiken reviewed Edwards' placement decision; in contrast, Heilman alleged that Defendant Singleton reviewed Defendant Carter's classification of Fleming.  See Amended Complaint, ¶ 19; Motion, at 2.  In light of the paucity of information, after extensive discovery showing Aiken's personal involvement in Heilman's circumstances, the Court finds that Heilman has failed to demonstrate a particularized need to depose Aiken.

The Court also finds that a deposition of Aiken would be cumulative to the information Heilman has secured or can secure from other sources. Heilman has already secured written discovery from Aiken. Heilman, further, has secured and can secure information about the Logan Placement Office from other sources. Heilman has deposed Defendant Gerringer from the Logan Placement Office, and the Court has authorized

Heilman to depose Defendant Edwards from the Logan Placement Office. The Rule 30(b)(6) witness from the Department would also have knowledge of policies regarding placement of prisoners within Logan. Aiken's deposition testimony will be cumulative to the information that Heilman could secure from these sources. Allowing a deposition of Defendant Aiken is not proportional to the needs of the case. The Court denies Heilman's request for leave to depose Defendant Aiken.

The Court's statements in this Opinion regarding the reasons for allowing a deposition of any Defendant is not intended to limit the scope of inquiry in any such deposition. Heilman may inquire about any topic allowed by the applicable rules of discovery.

THEREFORE, IT IS ORDERED that Plaintiff Hailey Heilman's Motion for Leave to Take Additional Depositions (d/e 75) is ALLOWED in part as set forth above.

ENTER:  August 19, 2020

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE