## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HALEY METCALF,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-3260-SEM-KLM |
| | ) | |
| MAGGIE BURKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION

There is unlikely to be a legal standard that the Court is more familiar with than the one applied to prisoner claims under Section 1983. A significant percentage of the Court's docket involve such claims, and this Court has issued dozens, if not hundreds, of rulings deciding when a plaintiff has carried her burden and when she has not. Here, in an extraordinarily detailed and thoughtful 78-page summary judgment opinion, the Court applied the well-established law on deliberate indifference to the facts of the case, allowing some claims to proceed to trial and entering judgment in Defendants' favor on others.

An astonishing five months after the Court's ruling—the same week that trial would have commenced but for a shortage of court reporters—and without any warning to or conferral with opposing counsel or the Court, Defendants filed their motion for reconsideration, telling the Court that it got it all wrong. According to Defendants, notwithstanding the Court's careful parsing of the record and the parties' submissions, and notwithstanding the Court's citation to dozens of binding precedents to support its conclusions, the Court repeatedly committed manifest errors in almost every respect.

---

[1] Since filing her Complaint, Plaintiff has gotten married and changed her name to Haley Metcalf.

Defendants' position is, of course, preposterous. Worse, Defendants' motion focuses exclusively on arguments that are well outside the bounds of a motion for reconsideration: rehashing unsuccessful arguments already rejected by this Court and raising new arguments that Defendants could have made but did not. In other words, Defendants have filed a classic "Motion for a Do Over"—exactly what a motion for reconsideration is ***not***. Defendants do not claim that the Court has made manifest errors of fact or law, but rather that the Court's assessment of the evidence was too generous to Plaintiff.

On top of all this, Defendants' timing is offensive. Not only are they filing their motion five months after the Court's summary judgment ruling, but even the alleged "new law" they cite is too old for a motion for reconsideration. The *T.S.* case regarding state law claims was issued in May, before the Court's summary judgment ruling. The *Hunter* case is from July, and even if it could move the needle (which it does not), it needed to be invoked months earlier, not after a four-month wait.

In sum, Defendants' motion should be denied promptly and completely, allowing the parties to put their full focus where it should be—preparing for the trial that will begin in less than two months.

## DISCUSSION

Motions for reconsideration are brought under Federal Rule of Civil Procedure 54(b). They are limited to situations where a court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Boone v. Ill. Dep't of Corr.*, 2023 WL 1529411, at *2 (C.D. Ill. Feb. 3, 2023) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). They may not be used to raise new arguments or rehash old ones, but are limited to

situations where the court has committed manifest errors of law or fact or to present newly discovered evidence. *Vesey v. Envoy Air, Inc.*, 2019 WL 13292941, at *2 (C.D. Ill. Aug. 29, 2019) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)).

Defendants' motion wholly fails to identify any instance in which the Court committed manifest errors of either law or fact. Instead, they simply argue that the Court reached the wrong result, or else attempt to take a second bite at the apple with new, available but unasserted arguments for summary judgment. Defendants' motion should be denied in its entirety.

For starters, Defendants offer absolutely no explanation why they contend this Court committed a manifest error of law in denying summary judgment to Defendants Jasmon, Lynch, Velazquez (now Martin), Sexton, or Price. Indeed, those Defendants are not even mentioned in Defendants' brief. *See generally* Dkt. 135. Certainly as to these Defendants, any request to reconsider summary judgment must be denied. Defendants' arguments with respect to the remaining Defendants should similarly be denied, as set out more fully below.

I.    **This Court correctly applied Seventh Circuit precedents in deciding that a jury could find Defendants were deliberately indifferent.**

This Court's summary judgment opinion included a thorough discussion of the legal standard governing Plaintiff's claims. Dkt. 129 at 32-35. This Court recognized that deliberate indifference claims include both an objective component—that the risk of harm to which the plaintiff was exposed was objectively serious—and a subjective component—that the evidence would permit a reasonable inference that the defendant actually knew of the risk and disregarded it. *Id.* at 32 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994); *Gevas v. McLaughlin*, 798 F.3d 475 (7th Cir. 2015)). Throughout its summary judgment opinion, the Court repeatedly returned to the deliberate indifference standard, assessing whether the direct or circumstantial evidence presented

would permit a reasonable jury to conclude both that Plaintiff faced an objectively serious risk of harm, and that the particular Defendant under consideration could be said to have known of and disregarded the risk. *See, e.g.,* Dkt. 129 at 53-59 (assessing the evidence regarding both Defendant Burke's knowledge of a risk of harm posed by her conduct, and her conduct in response disregarding those risks).

Of course, as the Seventh Circuit has recognized, most cases involving deliberate indifference "turn on circumstantial evidence" because "[r]arely if ever will [a defendant] declare, 'I knew this would probably harm you, and I did it anyway!'" *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Abiding by the binding dictates of the Seventh Circuit, this Court appropriately took account of all the direct and circumstantial evidence that both parties presented to determine whether a jury could reasonably find that the particular Defendant under consideration was deliberately indifferent to the objectively serious risk of harm Plaintiff faced.

Defendants argue that this Court centered its analysis on what Defendants Wilson, Calhoun, Carter, Singleton, Edwards, and Burke "should have perceived but did not." Dkt. 135 at 4. But Defendants' argument is nothing more than a request for the Court to undo its earlier adherence to binding precedent and instead credit Defendants' self-serving claims of ignorance over Plaintiff's evidence to the contrary. Not only is Defendants' argument not a basis for reconsideration, it is not a basis for summary judgment in the first place. *E.g., Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) ("At [summary judgment, courts] may not assess the credibility of the witnesses or balance the weight of conflicting evidence."). Defendants' request that their claims of ignorance should be credited over Plaintiff's direct and circumstantial evidence to the contrary is one that should be made to the *jury* at the upcoming trial and not to the Court, who is expressly forbidden from making such credibility determinations.

For example, Defendants argue that this Court should revisit denying summary to Defendant Wilson because she testified that she was "surprised that Fleming sexually assaulted Plaintiff" and had not known Fleming to be physically aggressive. Dkt. 135 at 4-5 (citing Wilson's testimony, Dkt. 104-14 at 82-83). But Defendants omit several key facts from the summary judgment record: (1) Plaintiff's mother told Wilson about her concern for her daughter's safety in light of Fleming's threatening behavior toward Plaintiff, Dkt. 129 at 59-60; (2) Wilson wholly disregarded this information until she "happened to see Plaintiff" a few days later, *id.*, at which point she confronted Plaintiff in a public setting; and (3) both Plaintiff's expert and other Defendants testified that Wilson's confrontation of Plaintiff in a public setting was grossly inappropriate and something Wilson would have known was grossly inappropriate, *id.* at 63. A jury might choose to credit Wilson's self-serving claims of ignorance at trial over the wealth of evidence that Plaintiff presented regarding Wilson's indifference toward Plaintiff's safety, but this Court may not do so at summary judgment. This Court's decision denying summary judgment to Wilson was indisputably correct.[2]

The same is true for Defendant Burke. Defendants argue in a single sentence that summary judgment should be revisited for Burke because "there is no question that Burke did not know that Plaintiff in particular was put at risk by the closing of D Wing and subsequent transfer of Fleming." Dkt. 135 at 5. But Defendants are just rehashing the argument that they raised in favor of Burke the first time around—that Burke "did not know about the underlying conduct" and so could not have been deliberately indifferent. Dkt. 103 at 17. Based on its thorough review of the evidentiary record, this Court determined that a reasonable jury could conclude otherwise. Dkt. 129 at 53-59.

---

[2] Defendants ask to revisit summary judgment for Defendant Calhoun for the same reasons as Wilson because Calhoun learned about Plaintiff's risk of harm from Wilson. Defendant Calhoun's request should be rejected for the same reasons articulated above. *See also* Dkt. 116 at 62-63.

Simply put, this Court's discussion of *why* Defendant Burke was not entitled to summary judgment is above reproach.

First, the Court's opinion cites and discusses the appropriate binding precedents governing Plaintiff's claim against Burke, *id.* at 54-55 (citing *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018); *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016); *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013); *Mayoral v. Sheahan*, 245 F.3d 934, 938-39 (7th Cir. 2001)). Then, the Court thoroughly analyzes the evidence regarding Burke's knowledge and conduct, with extensive discussion of and citation to Burke's own testimony and admissions. *E.g.,* Dkt. 129 at 56 (quoting Burke's admission she knew closing D wing would pose a risk to the women living in a housing unit with the former D wing prisoners); *id.* at 57-58 (noting that while Burke claimed to have responded reasonably to the known risks, a jury could reasonably disbelieve that testimony in light of Plaintiff's contrary evidence). Burke may believe that her own testimony about her subjective knowledge and intent should be credited above Plaintiff's contrary evidence, but again, only a *jury* (not a court at summary judgment) may make those determinations. Burke has offered no compelling reason for this Court to revisit its thorough and correct decision denying summary judgment.

Defendants' arguments regarding the remaining Defendants fare no better. Defendants argue that Carter, Singleton, and Edwards were denied summary judgment simply because they "failed to follow IDOC rules[,]" Dkt. 135 at 5, but Plaintiff presented evidence that went well beyond a simple failure to follow IDOC's rules[3]—she established that these Defendants knew of

---

[3] Of course, the Seventh Circuit has repeatedly held that while a violation of policies and protocols is not equivalent to a violation of the Constitution, "such protocols certainly provide circumstantial evidence that a [state actor] knew of a substantial risk of serious harm." *Petties*, 836 F.3d at 729; *see also Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." (cleaned up)). This proposition

a serious risk of substantial harm posed by their conduct, and disregarded that risk by engaging in the conduct that they did. *See, e.g.,* Dkt. 116 at 66-68, 70-71. This Court correctly concluded that Plaintiff's evidence, if credited (an assumption it was bound to make at the summary judgment phase), could lead a reasonable jury to conclude these Defendants were deliberately indifferent. Dkt. 129 at 64-70 (citing *Walsh v. Mellas*, 837 F.2d 789, 798 (7th Cir. 1988)). This Court clearly understood the difference between a simple, negligent failure to follow the rules and evidence sufficient to establish deliberate indifference when it granted Defendants' motion for summary judgment as to Greg DeJarnette. Dkt. 129 at 70-71. Defendants have offered no persuasive argument as to why reconsideration for these or any other Defendants on the question of their deliberate indifference is proper, and this Court should deny the motion.

## II. Plaintiff's claims were based on the evidence she presented and all reasonable inferences due to her from that evidence, and not based on speculation.

Defendants next argue the Court should reconsider summary judgment as to Defendants Cox and Lounsberry because Plaintiff's claims against them rely on speculation, rather than reasonable inferences from the evidence presented. Defendants specifically argue that it would be unreasonable to infer from Plaintiff's evidence that either Cox or Lounsberry could have heard Plaintiff's assault taking place.

Not so. As set out in Plaintiff's summary judgment brief, the assault took place *around* (not precisely) at 1 a.m. and lasted for *at least* 10 minutes Dkt. 116 at 48, ¶¶ 108, 111. Defendant Lounsberry signed the wing check logbook at 12:58 a.m. and Defendant Cox signed the book at 1:28 a.m., which would have occurred in the *middle* of their checks of the housing unit—checks that were conducted *for the purpose* of looking for audio or visual cues that indicated prisoners

---

is so well accepted within the Seventh Circuit that an instruction to that effect is included within the Seventh Circuit's pattern jury instructions. *See* Seventh Circuit Pattern Jury Instr., Intr. No. 7.04 (2017 ed.).

like Plaintiff were in danger of involved in an altercation. *Id.* at 48-49, ¶¶ 112-13; *see also* Dkt. 129 at 25. Plaintiff's roommate, Yvonne Williams, heard the attack from ten feet away, but contrary to Defendants' argument, there is no evidence in the record that the sounds of the assault were inaudible beyond ten feet. *Id.* at 45. This Court correctly determined that when considered as a whole (along with all reasonable inferences), this evidence would permit a reasonable jury to find that Defendants Cox and/or Lounsberry were made aware of the assault but failed to intervene to stop it.[4] Other than Defendants' disagreement with the Court's determination, Defendants have offered no reason why it has established that reconsideration is proper. The request to reconsider summary judgment as to Defendants Cox and Lounsberry should be denied.

## III.   This Court correctly found that a jury must evaluate any disputes regarding causation.

Plaintiff furnished ample evidence for a reasonable jury to find that Defendants caused her injuries. Defendants are liable for causing harms that were "foreseeably risked by [their] wrongful actions." *Hunter v. Mueske*, 73 F.4th 561, 569 (7th Cir. 2023). Whether harms were foreseeable is typically a jury question. *See id*. Jurors are well-suited to decide causation because they can "view evidence in its totality, draw on their life experiences and common sense, and then reach reasonable conclusions about the effects of particular action *and* inaction." *J.K.J. v. Polk County*, 960 F.3d 367, 384-85 (7th Cir. 2020).

---

[4] Defendants cites *Kemp v. Fulton County*, 27 F.4th 491, 497 (7th Cir. 2022), presumably because it involved a grant of summary judgment to an officer who did not hear an attack taking place. But in *Kemp*, the plaintiff did not dispute that the officer did not hear the attack and instead argued that the officer was nevertheless deliberately indifferent because he did not wear his hearing aid. *Id.* at 493. The Seventh Circuit determined that the record on what the officer *might* have heard had he been wearing the hearing aid was insufficient to permit a reasonable jury to find in the plaintiff's favor. That case has no bearing here, where there is no evidence that either Defendant Cox or Lounsberry suffered hearing issues.

Defendants nevertheless contend that this Court should revisit its opinion denying summary judgment to Defendants Carter and Edwards[5] on the issue of causation based on the Seventh Circuit's decision in *Hunter*. True, *Hunter* is another case in which a prisoner sued prison staff for deliberate indifference to the risk that his cellmate would attack him. But the resemblance between *Hunter* and this case ends there. In *Hunter*, the Seventh Circuit granted summary judgment to a prison official because, even though he had been deliberately indifferent in failing to change the plaintiff's housing assignment after he complained of being in fear of his cellmate, the attack occurred only after the cellmate's housing assignment *was* changed (though not by the defendant). *Id.* at 564, 566. The fact that it was undisputed that the assault occurred not because of the continued housing assignment, but instead because of a bizarre interaction initiated by the plaintiff after the housing assignment had already changed, meant that Hunter's case was the rare example where causation was lacking as a matter of law. *Id.* at 568; *see also id.* at 568 ("[C]ausation is typically a question best left for the jury.").

In terms of causation, this case bears no similarity to *Hunter*. To the contrary, the risk of harm to Plaintiff was entirely foreseeable to all Defendants who failed to protect her. Carter designated Fleming a nonpredator, either with actual knowledge of her disciplinary history or having recklessly disregarded it, despite knowing the importance of referencing such materials to prisoners' safety. Doc. 116 at 28-29, ¶¶ 33, 38. If Carter had not wrongly designated Fleming, and

---

[5] Defendants state without citation to the record that they also raised an argument regarding causation as to Defendants Cox and Lounsberry. That is no the case, and Defendants accordingly cannot raise that argument for the first time in their motion for reconsideration. *See, e.g.,* Dkt. 103 at 15-16; *see also Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017) ("[A]rguments raised for the first time in a motion to reconsider are waived."). In any event, there can be little doubt that a reasonable jury could easily conclude, upon determining that Defendants Cox and/or Lounsberry heard and disregarded sounds of Plaintiff's assault, that it was reasonably foreseeable that the assault would continue unabated as a result.

Singleton[6] had not rubberstamped that designation, Fleming's designation would have been referred to the PREA Compliance Manager, Dr. Ashley, who would have designated Fleming a predator. *Id.* at 23, ¶¶ 16–17. If Fleming had been designated a predator, she would not have been celled with Plaintiff, who had been identified as a low-aggression prisoner. *Id.* at 4, ¶ 56. For Edwards's part, he had "free reign" over cell assignments and exercised that considerable power to assign Fleming to Plaintiff's cell, even though he knew Fleming had a penchant for disciplinary infractions. *Id.* at 37, ¶¶ 64, 66. A reasonable jury could view this evidence and find that it was entirely foreseeable that these Defendants' actions created a risk that Fleming would harm Haley or other prisoners in her position.

Defendants contend that there are intervening causes that nevertheless interrupt the chain of causation for Defendants Carter and Edwards. Dkt. 135 at 9. But Defendants' assertion that other Defendants' misconduct interrupted the chain of causation is one that *they*, not Plaintiff, must plead and prove. *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011) ("In technical legal terms the burden of proving an intervening cause—something which snaps the causal chain (that is, operates as a superseding cause, wiping out the defendant's liability) that connects the wrongful act to the defendant's injury—is on the defendant." (cleaned up)). Before their motion, Defendants never argued that there was an intervening cause that interrupted the causal link of Defendants Carter's and Edwards's misconduct, let alone provide any evidence

---

[6] As Plaintiff noted in her summary judgment response brief, Defendants did not argue that Defendant Singleton's actions were not causally related to Plaintiff's harm. Dkt. 116 at 68 n.6. The argument was forfeited at that point, and certainly cannot be raised for the first time through a motion to reconsider. *Baker*, 856 F.3d 498 at 503.

establishing it. It is far too late to do so now.[7] Simply put, there is no basis for this Court to reconsider its ruling regarding causation.

## IV.     This Court correctly denied qualified immunity to Defendants Burke, Wilson, Gannon, and Veech.

Defendants next ask the Court to reconsider its denial of qualified immunity to Defendants Burke, Wilson, Gannon, and Veech. As a threshold matter, the entirety of Defendants' qualified immunity arguments could have been, but were not, presented to the Court during the original summary judgment briefing. Dkt. 103 at 26-30. In fact, Defendants do not even mention Defendants Burke, Wilson, Gannon, or Veech or the claims against them in arguing qualified immunity. These new arguments are thus no basis for reconsideration. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058, 1111 (N.D. Ill. 2020) (Rule 54(b) motions to reconsider are "not an appropriate means to advance arguments or theories that could and should have been made" but were not); *see also Boone*, 2023 WL 1529411, at *2 ("[A] motion to reconsider is not an occasion to make new arguments."). This Court should accordingly reject Defendants' request for reconsideration altogether, as they improperly try to take a second bite at the apple and assert available arguments they did not make.

Even on their merits, Defendants' arguments fail. Qualified immunity must be denied when government officials "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Est. of Clark v. Walker*, 865 F.3d 544, 549-50 (7th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A constitutional right "is clearly established when it is defined clearly enough to put officers on notice of their duties under the

---

[7] In any event, an injury can have multiple, non-simultaneous proximate causes. *See Fed. Deposit Ins. Corp. v. Chicago Title Ins. Co*., 12 F.4th 676, 688-89 (7th Cir. 2021); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("[T]he ordinary rules of tort causation apply to constitutional tort suits."); *see, e.g.*, *Gevas*, 798 F.3d at 481 (7th Cir. 2015). As such, Carter and Edwards are not spared liability simply by pointing fingers at the next person who also failed to protect Plaintiff.

circumstances they confront." *Id.* at 551. To defeat qualified immunity, a plaintiff need not cite a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The Court's summary judgment decision carefully analyzed Supreme Court and Seventh Circuit case law—case law spanning over two decades—holding that it was clearly established that "being violently assaulted by a fellow inmate in prison in a serious harm" and that prison officials must "take reasonable measures to abate the danger." *Balsewicz v. Pawlyk*, 963 F.3d 650, 657 (7th Cir. 2020) (recognizing that this right has been clearly established since at least the late 1990s). In reaching that conclusion, the Court acknowledged that the "right of prisoners to be free from sexual assault is both well established and expansive." Dkt. 129 at 37. Additionally, the Court's analysis appropriately hued closely to the facts of this particular case, observing that, viewing the evidence in the light most favorable to Plaintiff, Defendants "disregarded a known risk—the sexually violent proclivities of her cellmate, Jennifer Fleming." Dkt. 129 at 37. To support its conclusion, the Court cited, among a slew of other cases, *Velez v. Johnson*, 395 F.3d 732 (7th Cir. 2005).

In *Velez*, as here, the plaintiff attempted to alert a prison official about a violent threat from his cellmate. *Id.* at 736-37. As here, the guard "effectively ignored" the signal for help, and the plaintiff was "subsequently raped." *Id.* at 737. The *Velez* court rejected the argument that the guard had "to know the specifics of the danger to be culpable[,]" explaining that pertinent issue was "that [the guard] was aware of a serious risk of harm in some form, be it assault or the more serious transgression that actually occurred." *Id.*; *see also Gevas*, 798 F.3d at 484 (denying qualified immunity because "it is defendants who have the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner, and this is a now well-settled aspect of Eighth

Amendment jurisprudence"); *Brown v. Budz,* 398 F.3d 904, 915-16 (7th Cir. 2005) ("[A] common fact pattern found in our failure to protect cases finds deliberate indifference arising out of improper cell assignments, where the defendant custodian places an unwitting detainee in a cell with another detainee whom the custodian knows to have certain violent propensities."). In short, there can be little dispute, as this Court explained, that the constitutional right at issue in this case— that a prisoner has a right to be free from a known risk of sexual assault by another prisoner—has long been clearly established.

Moreover, contrary to Defendants' argument, the Court carefully examined the evidentiary record with respect to each Defendant before denying them qualified immunity. Regarding Veech and Gannon, this Court properly determined that Plaintiff had put forth sufficient evidence to establish that both Defendants were aware that Plaintiff faced a substantial risk of serious harm and that they disregarded that risk through their actions or inactions. Dkt. 129 at 41-42. As this Court recognized, Gannon's deliberate indifference is premised on multiple instances of being told about Fleming's harassing behavior toward Plaintiff, of which the phone call cited by Defendants is but one example.[8] *Id.*; *see also* Dkt. 116 at 40-41, ¶¶ 73-77. The same is true for Veech. Dkt. 116 at 41-42, ¶¶ 78-83.

Similarly (and as already addressed above), the Court appropriately analyzed Defendant Wilson's conduct and determined a jury could find her deliberately indifferent for her total lack of action in the face of a known risk to Plaintiff, followed by a public confrontation of Plaintiff that

---

[8] The phone call itself supports a finding of deliberate indifference. As the Court noted, after one instance in which Plaintiff told Veech about Fleming's aggressive and threatening behavior, she called Gannon (and not the shift commander, as she had repeatedly been instructed to do). Dkt. 116 at 41-42, ¶¶ 81-84. Gannon called the zone lieutenant, who told Gannon Plaintiff could either refuse housing or stay with Fleming. Gannon took no further action, which Plaintiff's expert opined was "highly concerning" and "contrary to accepted correctional practices." *Id.* The Court appropriately found these facts sufficient to permit a reasonable jury to conclude Gannon and Veech were each deliberately indifferent. Dkt. 129 at 41-44 (citing *Gevas,* 798 F.3d at 484).

"was unhelpful at best and dangerous at worst" because done in a setting that Wilson herself knew was grossly inappropriate. Dkt. 129 at 59-63. Wilson was correctly denied qualified immunity.

With respect to Burke, Defendants argue in just a single sentence that she was entitled to qualified immunity because she "lacked the requisite subject knowledge for a finding of deliberate indifference." Dkt. 135 at 11. But as explained above, the Court thoroughly reviewed the evidence and correctly concluded that when viewed in the light most favorable to Plaintiff (with reasonable inferences made in her favor), a reasonable jury could disagree. There is no basis for the Court to revisit that ruling. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (reconsideration motions are not to be used to rehash previously rejected arguments).

In sum, the Court carefully analyzed binding precedent to correctly determine the constitutional right at issue in this case was clearly established, and then carefully and thoroughly analyzed the factual record to determine whether or not each Defendant's conduct violated the well-worn precedents setting out that constitutional right. Defendants have offered no argument or justification as to why this Court's qualified immunity ruling was a manifest error of either fact or law, and this Court should accordingly decline Defendants' request to reconsider it.

## V.     There is no basis for this Court to reconsidering denying summary judgment on Plaintiff's state-law claim.

The request for reconsideration regarding the state law claims is similarly meritless. In its June 12 Order, the Court held that Defendants did not enjoy "statutory sovereign immunity" on Count III because that immunity does not extend to actions taken "in violation of statutory or constitutional law." Dkt. 129 at 74-76. The Court further held that under "binding Circuit precedent" a correctional official's liability for willful and wanton conduct is "coextensive with his liability for deliberate indifference." *Id*. 73, 76-77. Both holdings were clearly correct, and Defendants do not offer any basis for revisiting them at this late stage.

14

A.      **The Court correctly rejected claims of state law immunity.**

The Court's immunity analysis was based on the illegal-acts exception discussed in *Murphy v. Smith*, 844 F.3d 653, 660 (7th Cir. 2016). Defendants argue that the Court erred by applying this exception instead of the so-called "*Healy* factors" from *Healy v. Vaupel*, 549 N.E.2d 1240 (Ill. 1990). But Defendants never cited *Healy* in their motion papers and cannot now fault the Court for not addressing an argument that they failed to raise themselves. *See Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (arguments first raised in a motion to reconsider are forfeited).

The authority Defendants now invokes does not justify a different conclusion. In May 2023, a panel of the Seventh Circuit declined to recognize an illegal-acts exception in a personal capacity action for damages and instead applied the *Healy* factors to determine immunity. *See T.S. v. County of Cook*, 67 F.4th 884, 894-95 (7th Cir. 2023). This contradicted *Murphy*, yet the panel in *T.S.* did not point to any intervening state law decisions to support this different result. The panel simply offered a different interpretation of *Healy* and *Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583 (Ill. 2015), which the *Murphy* court also discussed at length. The Court's reliance on *Murphy* remains correct—and at a minimum is not a "manifest error[] of law" such that reconsideration is appropriate. *Caisse Nationale De Credit Agricole*, 90 F.3d at 1269.

Circuit Rule 40(e) provides a mechanism for a panel to overrule circuit precedent by circulating its draft opinion to the full court before publication. Yet the *T.S.* court did not circulate the opinion to the full court or even purport to overrule *Murphy. Compare Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1013 (7th Cir. 2020). Particularly where there has been no identifiable change in the controlling law, lower courts should not disregard earlier binding precedent where a subsequent panel reaches a different conclusion. *See DeCalonne v. G.I. Consultants, Inc.*, 197 F.

Supp. 2d 1126, 1134 (N.D. Ind. 2002) (following an earlier Seventh Circuit decision because "[o]verruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)").

Circulation to the full court of appeals was especially important here because the panel's analysis in *T.S.* rested upon a faulty predicate. *T.S.* assumed without analysis that the Illinois State Lawsuit Immunity Act's sets out substantive limitations that apply in federal court. Notwithstanding the "immunity" label, however, the Act does not actually bar damages claims. It provides only that such actions "must be brought in the [Illinois] Court of Claims." *T.S.*, 67 F.4th at 891 (quoting *Healy*, 549 N.E.2d at 1247). As the Seventh Circuit has held, "apart from invoking their rights under the eleventh amendment, states cannot insist that any particular category of litigation be conducted only in state court." *Rodriguez v. Cook County*, 664 F.3d 627, 631-32 (7th Cir. 2011). Under *Rodriguez*, Illinois is free to channel state court litigation against its officers into a particular forum but cannot preclude those same claims from being heard in *federal* court. The district court in *Murphy* explicitly relied on this principle in finding that immunity did not apply. *See Murphy v. Smith*, 2015 WL 13236221, at *8 (S.D. Ill. Sept. 25, 2015). Accordingly, this Court's reliance on *Murphy* was correct and Defendants have offered no legitimate justification to revisit that decision.

> **B.    This Court correctly held that that state and federal liability in this case is coextensive.**

In denying summary judgment on the merits of Count III, the Court observed that the Seventh Circuit has repeatedly held that state claims for willful and wanton conduct are essentially coextensive with federal claims for deliberate indifference. *See* Dkt. 129 at 76-77 (citing *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007), and *Chapman v. Keltner*, 241 F.3d 842 (7th Cir. 2001)).

Because a genuine issue of material fact existed on the federal claims, the Court appropriately held that summary judgment on the state claims was likewise inappropriate. *Id*.

Defendants attempt to distinguish *Williams* because the defendants in that case asserted an immunity that applies to local, not state, governmental actors. But Defendants flatly admit that they did not raise this argument as a basis for granting summary judgment on Count III. *See* Dkt. 135 at 13; *see also Boone*, 2023 WL 1529411, at *2. In any event, whether this case involves a claim of state or local immunity is a distinction without a difference here. The Court separately (and correctly) held that Defendants are not entitled to immunity. The willful and wanton standard, meanwhile, does not change depending on what immunity a defendant asserts—or whether a defendant asserts an immunity at all. Indeed, *Williams* itself cited *Chapman* to explain that the willful and wanton standard and the deliberate indifference standard are "remarkably similar" even though neither party in *Chapman* raised an immunity issue. *See Williams*, 509 F.3d at 404-05.

### C.    Reconsideration would have no practical effect on trial.

The overlap between the federal deliberate indifference standard and the state willful and wanton standard provides still another reason to deny Defendants' motion as to Count III. That is because a grant of summary judgment to Defendants on the state law claims would have no practical effect on the proceedings at trial. Before the trial date was postponed, the undersigned proposed to Defendants' counsel that the parties stipulate that liability on Count III (the state-law claim) would be derivative of liability on Count I (the federal claim) and therefore that the jury need not be instructed on nor return a separate verdict regarding Count III. Although Defendants never responded to this offer, Plaintiff remains willing to make this stipulation, which is both legally sound and would streamline proceedings for the court and the jury.

Given this stipulation, the most efficient course is to proceed to trial, instruct the jury on the federal claims, and then address any residual issues relating to the state law claims in post-trial motions or on appeal as needed. *Cf. Shidler v. Moore*, 2008 WL 553177, at *1 (N.D. Ind. Feb. 27, 2008) (denying motion for reconsideration because "[i]f the defendants lose at trial, this argument can then be properly presented on appeal"). Addressing these issues after trial would also reduce incentives for sandbagging. Particularly as the parties had an ongoing dialogue about these and other pre-trial matters, there is no good reason why Defendants should have waited to make this request until the eve of trial.

### Conclusion

For the reasons stated above, Defendants' motion for reconsideration should be denied.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Sarah Grady
Howard Kaplan
Jed Glickstein
David Schmutzer
KAPLAN & GRADY
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
(312) 852-2184
sarah@kaplangrady.com

## <u>CERTIFICATE OF TYPE-VOLUME LIMITATION COMPLIANCE</u>

      I, Sarah Grady, an attorney, hereby certify that the foregoing Plaintiff's Response to Defendants' Motion for Reconsideration complies with the type-volume limitation set forth in Local Rules 7.1(B)(4)(b) because it contains 5,831 words and 36,669 characters (including spaces). In preparing this certificate, I relied on the word count tool of the word-processing system used to prepare this brief, Microsoft Word 365.

<u>/s/ Sarah Grady</u>
Sarah Grady
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Grady, an attorney, hereby certify that on November 15, 2023, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.


Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff