# IN THE UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| HALEY HEILMAN, ) | |
| ) | Case No. 18-cv-3260-SEM |
| Plaintiff, ) | |
| ) | Hon. Sue E. Myerscough |
| v. ) | |
| ) | |
| MAGGIE BURKE, et al., ) | |
| ) | |
| Defendants. ) | |

## THIRD PARTY LOEVY & LOEVY'S POSITION ON ATTORNEYS' FEES

Now comes third party, Loevy & Loevy, and respectfully submits the following in response to the Court's recent Order regarding attorney's fees.

1. On October 22, Howard Kaplan sent our firm an email attaching a fee-related motion for reconsideration in this matter (on which we had not been consulted). *See* Exhibit A. Mr. Kaplan's email informed us that this Court had entered a text order asking him to solicit our position on the motion, and he stated that he would communicate our position to the Court. *Id.*

2. Mr. Kaplan's firm has previously taken the position that our firm has no standing to address the Court on this issue, arguing in their Fee Petition that the client, whom Kaplan & Grady controlled, had sole standing to seek Loevy & Loevy's fees. R.192 at 17.

3. On October 29, our firm responded to Mr. Kaplan, providing our position as requested. Our email stated: "Enclosed please find our position in

response to the Court's inquiry. Please submit it as tendered, rather than summarizing it or excerpting parts of it." *See* Exhibit B.

4.     On October 31, Mr. Kaplan wrote to us to inform us that he did not file the document we sent him memorializing our position, and instead summarized it in his own words. *See* Exhibit C.

5.     Mr. Kaplan's email attempted to justify his actions by claiming, among other things, that our position was unsworn and unsigned. While our position admittedly puts his law firm in a bad light, that was not a proper justification to withhold our position from the Court.

6.     Our firm respectfully requests that this Court take into consideration the position of our firm that was previously sent to Kaplan & Grady in response to the Court's order. Our position is reproduced for the Court as follows:

> Sarah Grady's law firm stole this client and this case from her former partners and former friends at our law firm, Loevy & Loevy. For reasons related thereto, she is operating under a conflict of interest that compromises her advocacy.
>
> As background, Ms. Grady approached our law firm a number of years ago and pitched us on hiring her to start a prisoner's rights practice within the firm. We accepted and supported the effort with the firm's financial and other resources, as well as the expertise of many of our well-qualified attorneys. Over the years, we built the practice with Ms. Grady as manager. For years, the practice lost money while we invested to build it up. We also paid the salary of Ms. Grady and multiple attorneys and support staff needed to help Ms. Grady build it, and all of the related expenses, totaling millions of dollars.

When the firm's prison caseload later matured, it became clear that there were several especially valuable cases that had a potential for significant recoveries for the client and the firm, vindicating the long-term vision for the practice and our firm's partners' investment in it.

At that point, Ms. Grady abruptly resigned from the firm to form Grady & Kaplan with her husband. Several hours after resigning, she informed us that she was taking the firm's five best prisoner cases, and provided us with written direction from those clients (including Heilman) to transfer the files to her.

She took cases likely to generate millions of dollars in fees, while abandoning the remainder. Many of the cases she left behind for her former partners and friends to handle could be described as nearly *pro bono* in value (difficult, riskier, lower damages, and of negative expected value).[1]

When we asked her why she was doing this after her former partners and friends had invested so much in her and the practice area, her answer was that it was "just business."

Ms. Grady and her husband (Howard Kaplan) were obviously entitled to start their own firm, but apparently the only way they could do this was by subsidizing their launch with fees earned on cases stolen from her former firm and friends. She did not have to do it that way, but that is the way she and Mr. Kaplan decided to do it. They have undoubtedly convinced themselves that they were somehow justified, but the facts are the facts.

The case before your Honor is one of the cases Ms. Grady stole. Two years ago, when Grady & Kaplan filed its appearance in this case and maneuvered to withdraw Loevy & Loevy, there were over 125 docket entries in the case and the case was nearly four years old. Loevy & Loevy had litigated the case heavily and paid out-of-pocket to fund it through motions to dismiss, discovery and related motion practice, experts, and summary judgment.

---

[1] As Attorney Patrick Murphy attested in support of Kaplan & Grady's fee petition here, most prisoner cases (*i.e.* the type Ms. Grady left behind at Loevy & Loevy) are: "difficult, generally unremunerative, and avoided by the larger trial bar." The Affidavit continued: "The market for these cases is poor and requires that lawyers must be appointed by the court to represent prisoners." Dkt. 192-3.

3

Thus, when Ms. Grady took this case away from her partners, the case was built and ready for trial, and the majority of the risk that would ever be had already been shouldered by our firm. The purpose of contingency fees, which Loevy & Loevy is entitled to under its retainer in this case (which Ms. Grady had signed on behalf of the firm) and which Kaplan & Grady has now extracted for itself, is to compensate firms for bearing the very risks that Loevy & Loevy bore. If Loevy & Loevy were a smaller firm, rather than one that we have been building through tremendous efforts for almost three decades, the theft of the partnership's opportunity and resources perpetuated by Ms. Grady could very well have destroyed the business.

Kaplan & Grady's malfeasance did not end with stealing the contingency fee from Loevy & Loevy. In addition, Kaplan and Grady also manipulated the proceedings when asking your Honor to award it fees under Section 1988. As stated, more than half of the docket entries and two-thirds of the life of the case occurred under Loevy & Loevy's watch, yet Kaplan & Grady asked the court to award it more than *ten times* Loevy & Loevy's hours: $2,458,962.50 for Kaplan & Grady but only $215,550.00 for Loevy & Loevy.  Loevy & Loevy was in charge for two-thirds of the case yet (three-quarters, as of the time of trial), yet Kaplan & Grady told the court that our firm is only entitled to one-tenth of the fee.

Kaplan & Grady's math is grounded in greed and opportunism, not truth and fairness. The profound disparity perpetrated in the fee litigation before this Court not only suggests that Ms. Grady manipulated the process by front-loading her timesheets to vastly favor her and her husband's new firm and disadvantage our firm, but she did the same thing with the hourly rates and multiplier that she certified as "reasonable" to this Court. Dkt. 192.

For example, Ms. Grady sought an hourly rate of $900/hour for her time after starting at Kaplan & Grady but only $500/hr. for her time at Loevy & Loevy billed merely months earlier.  There is no justification for this disparity: if $900/hr. is reasonable for her time working with her husband at their new start-up firm, as Ms. Grady swore under penalty of perjury, it is also the reasonable rate for the hours she billed working with her former partners at the established and respected Loevy & Loevy. Dkt. 192-5, Declaration of S. Grady.

4

Indeed, as Ms. Grady well knows, the law is clear that all of the hours an attorney billed to a case from its inception are to be awarded at the attorney's then current reasonable hourly rate in order to account for the time value of money. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 283–84 (1989) (appropriate to compensate attorneys for fees received years late, "as it frequently is in complex civil rights litigation," by awarding all hours at the current rather than historic hourly rates). Ms. Grady relied on that very rule when asking the court to award all of her 2022-24 time at her then current rate, and even cited Seventh Circuit case law to this Court that stands for the proposition. See *Kaplan & Grady Fee Petition*, Dkt. 192, citing Mathur v. Bd. of Trustees of S. Illinois Univ., 317 F.3d 738, 744 (7th Cir. 2003), id. at 743 ("appellants based their fee petition on their rates for 2001, rates current as of the date of the fee petition"). But when it came to Loevy & Loevy, she behaved the opposite.

The only conclusion to be drawn from Ms. Grady's internally contradictory behavior is that she and her firm were negotiating away Loevy & Loevy's recovery to pad their own. Where the firms have a dispute over the contingency fee, Ms. Grady is improperly trying to manipulate the quantum meruit calculation to favor her firm.

Equally self-serving and abusive of the proceedings, Ms. Grady sought a two-time risk multiplier on her $900/hour rate using *ex ante* risk of the case -- *the risk that Loevy & Loevy bore* – but requested the multiplier for her firm rather than Loevy & Loevy. Essentially, Ms. Grady's Petition argued that her firm should get the benefit for the risk that Loevy & Loevy's had undertaken:

> Plaintiff retained Ms. Grady's former firm (and then, in June 2022, Ms. Grady's new firm) after first reaching out to several local attorneys, none of whom responded to her inquiry or indicated that they were willing to litigate her case. *See Mathur*, 317 F.3d at 744 (explaining "it was [] reasonable for [plaintiff] to search for an attorney in Chicago after he exhausted his options in southern Illinois"). Plaintiff recalls sending letters to at least five attorneys, including multiple local attorneys. Ms. Grady was the first to respond. Plaintiff thinks it is possible that one local attorney responded much later, but she does not remember the details.

Dkt. 197 at 14. Likewise at page 16 Kaplan & Grady argue that the multiplier they sought only for their firm's time was justified due to the "long and difficult path" it took to bring the case to fruition, but it specified *the things that Loevy & Loevy did*, including: "Getting there required over 30 depositions; tens of thousands of pages of document discovery; motions to compel to shake loose that discovery; two separate expert reports; litigation over the admissibility of one expert's opinions; and two rounds of briefing on dispositive motions."

When she filed the fee petition, Ms. Grady argued that the client, whom Kaplan & Grady controlled, had sole standing to seek Loevy & Loevy's fees. *Id.* citing Ortiz v. Stambach, 657 F. Supp. 3d 243, 270 (W.D.N.Y. 2023) for the proposition that "'[t]he right to [seek fees for hours expended by prior counsel]" belongs to the [p]laintiff.'" *See Kaplan & Grady Fee Petition*, Dkt. 192 at 17.[2]

We respectfully ask the Court to equitably and fairly mitigate the losses that Ms. Grady inflicted via her conduct before this Court. To that end, at a minimum, the Court should award Loevy & Loevy for the petitioned hours at the same $900 rate Ms. Grady sought and obtained for her own firm, adjusting Kaplan & Grady's award if necessary.

To the extent that the Court has any questions or would like to inquire further, Loevy & Loevy stands ready to appear at any hearing the Court may see fit to convene.

---

[2] Ms. Grady had previously made an unreasonable demand for our compliance. Specifically, on Wednesday afternoon, February 7, our firm received a FedEx letter from a lawyer retained by Kaplan and Grady stating in part that if we wanted to submit time for the Heilman petition (due February 19) then we had approximately 48 hours to assemble and provide them our fee-related materials "by the close of business on Friday [February 9]," or they would not include it – an unreasonable (and arbitrary) deadline we were unable to meet, in part because another attorney who worked on the case had left the firm.

          Respectfully Submitted,

          <u>s/ Jonathan Loevy</u>

Jonathan Loevy
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607

## CERTIFICATE OF SERVICE

I, Jonathan Loevy, an attorney, hereby certify that on November 1, 2024, I caused the foregoing to be filed using the Court's CM/ECF system, which affected service on all counsel of record.

s/ Jonathan Loevy